# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BOBBY COOK, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | **Case No.:  CV 01-P-2000-S** |
| } | |
| **SUNBEAM PRODUCTS, INC.,** } | |
| } | |
| **Defendant.** } | |

## **MEMORANDUM OPINION**

**I.    INTRODUCTION**

Pending before the court are Defendant Sunbeam Products, Inc.'s ("Sunbeam" or "Defendant") Motion to Exclude the Testimony of Plaintiffs' Expert William T. Cronenwett (Doc. #42) and Motion for Summary Judgment (Doc. #43), both of which were filed on April 30, 2004. By agreement of the parties, the court took these pending motions under submission without conducting an evidentiary or other hearing.  For the reasons set forth below, Sunbeam's Motion to Exclude the Testimony of Plaintiffs' Expert William T. Cronenwett is due to be granted, and Sunbeam's Motion for Summary Judgment is due to be granted.

**II.    BACKGROUND**

Plaintiff, Bobby Cook, individually and as the representative of the estate of Cathy Lynn Cook ("Plaintiffs"), filed this products liability action in Florida circuit court.  After this case was removed to the United States District Court for the Southern District of Florida, it was transferred to this court pursuant to 28 U.S.C. § 1404(a).  In their complaint, Plaintiffs allege that Sunbeam's electric blanket was defective and caused the death of Mr. Cook's wife.

### III. STATEMENT OF FACTS

On February 20, 2000, Cathy Lynn Cook died as a result of burns that she suffered in a fire at the home she and her husband owned in Leeds, Alabama. (Doc. #1 at Ex. A at Compl. ¶ 2; Doc. #45 at 1). Mrs. Cook's husband, Plaintiff Bobby Cook, is the personal representative of his wife's estate. (Doc. #1 at Ex. A at Compl. ¶ 1).

Moody Fire Chief Joe Nobles investigated the scene of the fire, and concluded that the most probable cause of the fire was "smoking in bed." (Doc. #45 at 1). Similarly, Deputy State Fire Marshall Mike Haynes, who accompanied Chief Nobles to the scene, reached the same conclusion. (Doc. #45 at 1).

Subsequently, State Farm, Plaintiffs' fire insurer, retained Barry Slotter to do a cause and origin investigation at the scene of the fire. (Doc. #45 at 1). Slotter, a certified fire investigator, also determined that the most probable cause of Plaintiffs' house fire was careless smoking and that the fire originated on the east side of the bed, near the head of the bed at floor level. (Doc. #45 at 1).

Plaintiffs dispute the conclusions reached by Moody Fire Chief Nobles, Deputy State Fire Marshall Haynes, and the certified fire investigator, Slotter. Plaintiffs maintain that a Sunbeam electrical product, namely, a defective electrical blanket, was the source that ignited the fire, which resulted in Mrs. Cooks death. (Doc. #1 at Ex. A at Compl. ¶ 3). In support of their allegations of injury due to a defective product, Plaintiffs rely upon their expert witness, William T. Cronenwett.

### IV. ANALYSIS

#### A. Admissibility of Plaintiffs' Expert Testimony

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 must be read in conjunction with three seminal decisions by the Supreme Court of the United States related to expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *General Electric Co. v. Joiner*, 522 U.S. 136 (1977); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

The *Daubert* decision rejected the previously followed "general acceptance" standard on the admissibility of scientific expert testimony that was established under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). Instead, the *Daubert* Court addressed admissibility of scientific expert testimony within the framework of Rule 702 and emphasized the role of the district court to perform a gatekeeping function to ensure that any admitted expert testimony is both relevant and reliable.

In defining the district court's gatekeeping function, the Supreme Court stated:

> The trial court must determine at the outset whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine the fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

*Daubert*, 509 U.S. at 592-93.

In *Joiner*, the United States Supreme Court upheld a district court's decision granting summary judgment for the defendant on the basis that the plaintiff's experts' testimony connecting plaintiff's cancer to his exposure to PCBs and other chemicals did not rise above the level of subjective belief and speculation. In clarifying the sufficiently relevant and reliable standard

announced in *Daubert*, the *Joiner* Court pointed out that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and opinion proffered." *Joiner*, 522 U.S. at 146 (citation omitted).

The *Kumho Tire* decision extended the *Daubert* analysis to all types of "technical or other specialized knowledge . . . ." *Kumho Tire*, 526 U.S. at 141.  ("We conclude that *Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.").  *Kumho Tire* involved the admissibility the proffered testimony of an engineer, who was an expert in tire failure analysis.  In upholding the district court's decision to exclude the plaintiff's expert's testimony based upon lack of reliability, the Supreme Court noted that the relevant inquiry was whether the expert could reliably determine the cause of the specific tire's separation. *Kumho Tire*, 526 U.S. at 154.

"'[O]rdinarily, expert testimony is required' in AEMLD cases[.]" *Rudd v. General Motors Corp.*, 127 F. Supp. 2d 1330, 1338 (M.D. Ala. 2001) (citing *Sears, Roebuck & Co., Inc. v. Haven Hills Farm, Inc.*, 395 So.2d 991, 995 (Ala.1981)).  As explained in *Cooper v. Toshiba Home Tech. Corp.*, 76 F. Supp. 2d 1269 (M.D. Ala. 1999):

> When a product in question is of a complex and technical nature such that a lay juror could not, in the absence of expert testimony, infer that a defective condition of the product caused the product's failure and caused the resulting injury to the plaintiff, expert testimony is a necessary component of a plaintiff's case.

*Cooper,* 76 F. Supp. 2d at 1276 (citing *Townsend*, 642 So. 2d at 415); *Brooks v. Colonial Chevrolet-Buick*, 579 So. 2d 1328,  1333 (Ala. 1991).  Similar to the kerosene heater at issue in *Cooper*, a lay

juror "could not, in the absence of expert testimony," draw the inference that the Sunbeam electrical blanket in Mrs. Cook's bedroom was defective and that its condition was the cause of Mrs. Cook's death. Accordingly, the court is convinced that this is a case in which expert testimony is integral.

Plaintiffs have designated William T. Cronenwett as their expert in this case. Mr. Cronenwett has offered his opinion that because, in his view, Defendant has manufactured other products that are defective, and because a fire started in Mrs. Cook's bedroom while the blanket was present, these facts are consistent with the theory that the blanket caught fire because it was defective. There are several obvious flaws with respect to that purported expert opinion testimony.

First, Mr. Cronenwett freely admits that he is unqualified to give an expert opinion on the cause and origin of fires. (Doc. #46 at Ex. E at 36-37 ("Q. Let me ask you this question: You are not and do not hold yourself out to be an expert in origin and cause of fires, do you? A. No, I do not.")).[1] He also concedes he has had no formal training in this area. *Id*.

Second, as noted above, the separate investigations into the death of Mrs. Cook have resulted in three different witnesses arriving independently at the same conclusion: the most probable cause of the fire was smoking. Mr. Cronenwett concedes that he is unable to rule out any other possible causes of the fire, such as cigarettes. Although this fact alone does not carry the day for the Defendant, Mr. Cronenwett further admitted that due to his lack of expertise in the key area of fire cause and origin, he cannot say what caused the fire. In his deposition, Mr. Cronenwett also admitted that, in addition to not having any training as an expert in the origin or cause of fires, he

---

[1] To the extent that Mr. Cronenwett has been called upon to testify about the cause and origin of fires, such situations have been limited to "strictly electrical fires where it seems evident to the fire marshal and the firefighters and the insurance people that a particular electrical appliance caused a fire." (Doc. #46 at Ex. E at 36-37).

5

did not inspect the scene of the fire, did not perform a cause and origin analysis, and had not reviewed the report or deposition testimony of Barry Slotter, who did perform such an analysis. (*Id*. at 6, 9, 13, and 19). Mr. Cronenwett was unable to point to a specific malfunction in the electric blanket that may have caused the fire. (*Id*. at 34, 40-41).

Third, Plaintiffs have not shown that any of Mr. Cronenwett's opinions related to the fire's origin and cause are based upon any acceptable methodology applicable to fire investigation. Mr. Cronenwett merely states his opinion that other products manufactured by Defendant are defective and therefore the blanket Mrs. Cook was using may also have been defective and caused the fire. That proposed testimony is based upon nothing more than speculation and conjecture; such an expert opinion is not reliable. *See, e.g., Weisgram v. Marley Co.*, 169 F.3d 514, 519 (8th Cir. 1999) (fire investigator did not have "free rein to speculate . . . as to cause of fire by relying upon inferences that had absolutely no record support"), *aff'd*, 528 U.S. 440 (2000).

Applying the above-analyzed Supreme Court cases and *Cooper*, the critical inquiry is not whether a Sunbeam electrical blanket has ever caused injury due to a defective condition in general; rather, the issue is whether the Sunbeam electrical blanket in Mrs. Cook's bedroom was defective and, if so, whether that defect caused the fire that resulted in Mrs. Cook's death. *Cooper,* 76 F. Supp. 2d at 1276. No systematic or reliable methodology was utilized by Mr. Cronenwett to reach his conclusion. Therefore, his testimony, if allowed, would confuse, mislead, and unfairly prejudice the jury. The court concludes that the exclusion of the testimony in question is the very type of gatekeeping function that the Supreme Court has called upon the district courts to perform and is consistent with *Daubert*, *Joiner*, and *Kumho Tire.* In sum, the *Joiner* analytical gap is too wide and the *Kumho Tire* lack of specific causation analysis is too great for Mr. Cronenwett's testimony to be

admissible under the *Daubert* reliable and relevant standard.

### B.   Evaluation of Sunbeam's Motion for Summary Judgment

As stated in section IV. A. above, and consistent with overwhelming Alabama AEMLD precedent, the court is convinced that Plaintiffs' case is sufficiently complex and technical in nature that it requires expert testimony. *See, e.g., Graham v. Sprout-Waldron and Co.*, 657 So.2d 868, 873-74 (Ala.1995) (quoting *Brooks v. Colonial Chevrolet-Buick* decision and finding testimony of non-expert material handler and expert witness insufficient to survive summary judgment on proposed safety measure to add vibrators to bins claimed to be unreasonably dangerous and defective because of lack of adequate proof on difficult causation issue); *Townsend* v. *General Motors Corp.*, 642 So. 2d 411, 415 (Ala. 1994) (describing need for affirmative proof in AEMLD cases, citing *Brooks* and several other opinions, and noting that '[i]n fact, we specifically held in *Brooks*, a case similar to the present case, that a complex braking system, such as the one at issue here, is 'precisely the type of complex and technical commodity that [requires] expert testimony to prove an alleged defect.'"); *Brooks v. Colonial Chevrolet-Buick*, 579 So. 2d 1328, 1333 (Ala. 1991) (same). Even if, as Plaintiffs argue, there are certain circumstances where a reasonable jury can infer AEMLD liability from the attendant circumstances in the absence of expert testimony, this case does not present them. There is simply no substantial evidence before the court that the electric blanket was defective and the cause of the fire. Three separate individuals conduced investigations and came to the same conclusion: the fire was caused by cigarette smoking. Therefore, because Plaintiffs have not proffered any substantial evidence (including expert testimony) that Defendant's blanket caused

the fire, their claims cannot survive summary judgment.[2]

## V.  CONCLUSION

As discussed above, Plaintiffs' expert witness's subjective belief and speculative opinion that the electrical blanket in Mrs. Cook's bedroom caused the fire that resulted in her death does not survive Sunbeam's *Daubert* challenge.  Accordingly, Sunbeam's Motion to Exclude the Testimony of Plaintiffs' Expert William T. Cronenwett is due to be granted.

Consequently, absent any admissible expert witness testimony on product defect, or any other substantial evidence that the blanket caused the fire, there are no material factual disputes, and Sunbeam is entitled to judgment as a matter of law as to the claims set forth in Plaintiffs' Complaint.[3] Accordingly, although the court grieves Mr. Cook's loss, Sunbeam's Motion for Summary Judgment is due to be granted.  The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this ____28th____ day of February, 2005.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[2] Mr. Cook's testimony that his wife was not smoking three hours before the fire started is not substantial evidence that the blanket was defective and the source of the fire.

[3] Plaintiffs appropriately concede in their brief that Sunbeam is entitled to summary judgment on their claims for breach of warranty and strict liability.  (Doc. #49 at 19-20).